UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VICTORIA T.,[1]

      Plaintiff,

                                 **Case No. 2:20-cv-14075**

    v.                         **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Victoria T. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

I.    **PROCEDURAL HISTORY**

On September 14, 2011, Plaintiff filed her applications for disability insurance benefits

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

and supplemental security income, alleging that she has been disabled since February 15, 2008.
R. 62, 71, 81, 95, 174–81. The applications were denied initially and upon reconsideration. R.
109–14, 117–21. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").
R. 128–29. ALJ Donna Krappa held a hearing on December 17, 2014, at which Plaintiff, who
was represented by counsel, appeared and testified, as did a vocational expert. R. 24–61. In a
decision dated April 22, 2015, the ALJ concluded that Plaintiff was not disabled within the
meaning of the Social Security Act from February 15, 2008, Plaintiff's alleged disability onset
date, through the date of that decision. R. 10–19 ("the ALJ's 2015 decision"). Plaintiff timely
filed an appeal from the 2015 decision pursuant to 42 U.S.C. § 405(g). [*Victoria*] *T*[.] *v. Comm'r
of Soc. Sec.*, 2:16-cv-9244 (D.N.J.) ("the 2016 case"). On March 15, 2018, a Judge of this Court
reversed the 2015 decision and remanded the action for further proceedings. *Order*, ECF 22
(issued in the 2016 case) (hereinafter "the March 2018 Order").[3]

The Appeals Council vacated the ALJ's 2015 decision and directed that, on remand, the
ALJ "offer the claimant the opportunity for a hearing, take any further action needed to complete
the administrative record and issue a new decision." R. 540. On November 21, 2019, the ALJ
held a hearing, at which Plaintiff, who was again represented by counsel, testified. R. 500–23.
On April 22, 2020, the ALJ held another hearing, which Plaintiff attended and at which a
medical expert and a vocational expert testified. R. 452–98. In a partially favorable decision
dated June 10, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the
Social Security Act from February 15, 2008, until April 25, 2019, *i.e.*, the date on which
Plaintiff's age category changed; the ALJ concluded that Plaintiff became disabled on that date

---

[3] The Court addresses the March 2018 Order and the related procedural history in greater detail
later in this Opinion and Order.

and remained disabled through the date of the decision. R. 433–444 ("the ALJ's 2020 decision").

The ALJ also found that Plaintiff was not under a disability within the meaning of the Social

Security Act through March 31, 2011, the date on which Plaintiff was last insured for Disability

Insurance Benefits. *Id*. It does not appear that Plaintiff filed exceptions to that decision and the

Appeals Council did not assume jurisdiction, making the 2020 decision the final agency

decision. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). Plaintiff timely filed this appeal pursuant to

42 U.S.C. § 405(g). ECF No. 1. On June 4, 2021, Plaintiff consented to disposition of the matter

by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Rules of Civil Procedure. ECF No. 8.[4] On June 8, 2021, the case was reassigned to the

undersigned. ECF No. 9. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion.

*Biestek v. Berryhill*, 587 U.S. ----, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   THE ALJ'S 2015 DECISION

Plaintiff was 38 years old on February 15, 2008, her alleged disability onset date. R. 17. In the ALJ's 2015 Decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 10–19.

At step two, the ALJ found that Plaintiff's arthritis, asthma, a skin disorder (psoriasis, contact dermatitis, and eczema), and obesity were severe impairments. R. 12. The ALJ also found that Plaintiff's alleged back disorder, psoriatic arthritis, and mental impairments (depression and anxiety) were not severe. R. 13–14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–15.

At step four, the ALJ found that Plaintiff had the RFC to perform the exertional demands of less than a full range of light work subject to various additional limitations. R. 15–17. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a security guard. R. 17.

At step five, the ALJ found that a significant number of jobs—*e.g.*, jobs as a document prep worker, a scale operator, and a table worker—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 18–19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 15, 2008, her alleged disability onset date, through the date of that decision. R. 19.

### IV.   THE ALJ'S 2020 DECISION AND APPELLATE ISSUES

In the ALJ's 2020 Decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity between February 15, 2008, her alleged disability onset date, and the date of the decision. R. 436.

At step two, the ALJ found that Plaintiff's skin disorders (including psoriasis, contact dermatitis, and eczema), polyarthralgias, lumbar spondylosis, asthma, obesity, and bursitis were severe impairments. *Id.* The ALJ also found that Plaintiff's alleged psoriatic arthritis, depression, and anxiety and Plaintiff's diagnosed dysthymic disorder, panic disorder with agoraphobia, and personality disorder with borderline and dissociative traits were not severe. R. 436–37.

At step three, the ALJ found that, since February 15, 2008, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 437–38.

At step four, the ALJ found that, since February 15, 2008, Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 438–42. The ALJ also found that, since February 15, 2008, this RFC did not permit the performance of Plaintiff's past relevant work as a security guard. R. 442. The ALJ found that, prior to the established disability onset date, Plaintiff was a younger individual (aged 18–44), but that Plaintiff's age category thereafter changed to that of an individual closely approaching advanced age. *Id.*

At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to April 25, 2019, a significant number of jobs—*i.e.*, approximately 5,305 jobs as a ticket counter; approximately 8,178 jobs as an address clerk; and approximately 5,141 jobs as an information clerk—existed in the national economy and could be performed by Plaintiff. R. 442–43. However, the ALJ also found that, as of April 25, 2019, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 443. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to April 25, 2019, but that she became disabled on that date and continued to be disabled through the date of the 2020 decision. *Id.* The ALJ further found that Plaintiff was not under a

disability within the meaning of the Social Security Act at any time through March 31, 2011, the date on which she was last insured for Disability Insurance Benefits. *Id*.

Plaintiff argues that the ALJ failed to comply with the Court's remand order in the 2016 case and disagrees with the ALJ's 2020 decision at steps three, four, and five. She asks that the decision of the Commissioner be reversed for an award of benefits or, alternatively, remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 17. The Acting Commissioner takes the position that her current decision should be affirmed in its entirety because the ALJ's 2020 decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25.

## V.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   Francky Merlin, M.D.

On June 3, 2012, Francky Merlin, M.D., conducted a consultative examination of Plaintiff. R. 316–18. Dr. Merlin noted, *inter alia*, that "[g]rasping strength and manipulative functions are not impaired." R. 317. Dr. Merlin diagnosed hypertension, asthma, and polyarthralgia and opined that Plaintiff could sit, stand, walk, hear, and speak. R. 318.

### B.   Ronald Bagner, M.D.

On December 31, 2019, Ronald Bagner, M.D., conducted a consultative examination of Plaintiff and completed a medical source statement regarding Plaintiff's ability to perform work-related activities (physical). R. 785–96. Dr. Bagner's findings were as follows:

> Vital Signs: Height 63 inches, weight 188 pounds. Pulse 82, respirations 16, and blood pressure 128/80. General Appearance: This is a 50-year-old female, who ambulates with a quad cane. She ambulates with moderate difficulty. She gets on and off the examining table with moderate difficulty. She gets dressed and undressed without assistance. She is not uncomfortable in seated position during the interview. Cervical: There is minimal movement in the cervical region during

the examination. During spontaneous activity, there is normal lateral rotation to the right. Biceps, triceps and brachioradialis reflexes are l+ bilaterally. There is a stocking decreased sensation in the entire left and right upper extremity, which does not fit any anatomical distribution. Upper Extremities: The left shoulder shows an active range of motion of 0-70 degrees forward elevation, 0-70 degrees of abduction.

The patient did not allow passive range of motion testing. The right shoulder shows an active range of motion of 0-70 degrees forward elevation, 0-70 degrees of abduction. The patient would not allow passive range of motion testing. The elbows show a normal range of movement. Pain on movement of the elbows. The forearms and wrists show a normal range of movement, pain on movement. *The patient holds her fingers in 20 degrees of flexion at the proximal interphalangeal joint and would not actively move the fingers. The patient would not allow passive range of motion of fingers. The grips could not be evaluated.* There is eczema of the hands bilaterally. Back: Flexion is 0-40 degrees, extension is 0. Pain on movement of the lower back. The patient would not allow testing of straight leg raising in the lying position. No pain on straight leg raising in the seated position. The knee and ankle reflexes are 2+ bilaterally. No atrophy to thigh or calf musculature. No motor abnormalities in the lower extremities. A stocking decreased sensation in the entire left and right lower extremities which does not fit any anatomical distribution. Lower Extremities: The patient would not allow range of motion testing of the hips. The patient would not allow range of motion testing of the knees. During spontaneous activity, the knees show a normal range of movement. The ankles show a normal range of movement. Pain on movement of the ankles. There is hypersensitivity to light palpation in the entire upper or lower extremities.

R. 785–86 (emphasis added). Dr. Bagner's impression was arthritis. R. 786. He went on to note

as follows:

The patient ambulates with a quad cane. She ambulates with moderate difficulty, she can ambulate without the cane. She gets on and off the examining table with moderate difficulty. She gets dressed and undressed without assistance. She is not uncomfortable in seated position during the interview. *The objective findings do not correlate with the patient's marked difficulty*. Pain on movement of the cervical area. Pain on movement in the lower back. Pain on movement of the shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles. Stocking decreased sensation in the entire upper and lower extremities, which does not fit any anatomical distribution. Range of motion in the cervical region as noted. Range of motion of the shoulders as noted. *Range of motion of the fingers as noted. The grips could not be evaluated as noted above*. Range of motion of the lower back as noted.

The patient would not allow evaluation of range of motion of hips and knees. During spontaneous activity, knees show a normal range of movement. The reflexes are as noted.

11

R. 786–87 (emphasis added). In evaluating Plaintiff's ability to perform work-related activities, Dr. Bagner opined, *inter alia*, that Plaintiff could occasionally (very little up to one-third of the time) reach overhead and in all other directions, and handle, finger, feel, and push/pull with both hands. R. 792.

### C.   Stephen Kaplan, M.D.

On April 22, 2020, Stephen Kaplan, M.D., testified before the ALJ as a medical expert. R. 456–83. Dr. Kaplan noted that "there is really quite a major gap in the record, between about . . . 2014, 2016, and then 2019." R. 458; *see also* R. 476–77. However, Dr. Kaplan credited Dr. Bagner's findings regarding Plaintiff's manipulative limitations with her hands, noting that Plaintiff's ability to manipulate "is very limited" as of 2019 but "[n]ot before." R. 463–64; *see also* R. 476 (reflecting Dr. Kaplan's observation that Dr. Merlin had found in 2012 that Plaintiff could grasp and manipulate). Dr. Kaplan agreed with Dr. Bagner's opinion that Plaintiff could manipulate only occasionally. R. 478. Asked by Plaintiff's counsel if Plaintiff was limited to sedentary work and "had hand significant problems with her hands, whether they be neurological" or dermatological, Dr. Kaplan responded that "it's not possible to tell you" and that he "can't make that determination from the lack of information." R. 482.

## VI.   DISCUSSION

### A.   The Court's March 2018 Order in the 2016 Case

Plaintiff argues that the ALJ's 2020 Decision failed to comply with the Court's March 2018 Order in the 2016 case, reversing the ALJ's 2015 Decision and remanding the action to the Commissioner for further proceedings. *Plaintiff's Moving Brief*, ECF No. 17, pp. 12–24. Plaintiff specifically argues that the ALJ's 2020 decision ignores the findings of fact made in the March 2018 Order—*i.e.*, that Plaintiff's psoriatic arthritis and mental impairments (**personality disorder**

with dis-associative features, depressive disorder, anxiety disorder with agoraphobia, and panic disorder) were severe—that the ALJ ordered, but did not pay for, a MRI as ordered by the Court in the March 2018 Order, and that the ALJ failed to address the disconnection between Plaintiff's mental impairments and her manipulative restrictions and the RFC, which was the basis for the hypothetical questions presented to the vocational expert. *Id.* Plaintiff contends that the ALJ's failure to comply with the March 2018 Order in the 2016 case requires remand. *Id.* For her part, the Acting Commissioner notes that the Judge who issued the March 2018 Order later significantly altered that Order, eliminating the findings of fact, the directives relating to a MRI, and the language regarding the RFC limitations and the ALJ's hypothetical questions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, pp. 13–16; *Defendant's Supplemental Brief*, ECF No. 30. *See Transcript of July 18, 2018, Hearing*, ECF No. 29 (filed in the case presently before this Court).[5] The Acting Commissioner therefore takes the position that the ALJ's purported failure to comply with the March 2018 Order cannot serve as a basis to remand this action. *Id.* The Acting Commissioner's arguments are well taken.

By way of background, on February 6, 2018, a Judge of this Court held oral argument in the 2016 case on the parties' motions for summary judgment. *Minute Entry,* ECF No. 20 (in the 2016 case). The Judge issued a decision from the bench in the 2016 case, reversing the

---

[5] This Court previously directed the Acting Commissioner to obtain and file the transcript of the July 18, 2018, hearing in the 2016 case and directed the parties to supplement their memoranda or otherwise address the issues addressed at that hearing. *Order*, ECF No. 27 (issued in the case presently before this Court). That transcript has now been filed in this action, *Transcript of July 18, 2018, Hearing*, ECF No. 29. The Acting Commissioner has filed a supplemental memorandum, *Defendant's Supplemental Brief*, ECF No. 30, but Plaintiff has not supplemented her original memorandum nor has she otherwise addressed these issues.

Commissioner's decision. *Id*. On March 15, 2018, the Judge issued a written order in the 2016

case, making certain findings of fact and issuing directions on remand, as follows:

> [T]he Court having explained its ruling, reasons and instructions in a Bench
> Decision announced on February 6, 2018; the Court now records its relevant
> observations as follows:
>
> 1. Plaintiff suffers a back impairment that is "severe" under the
> Commissioner's definition of severity. The decisional finding to the contrary is not
> based on substantial evidence.
>
> 2. Plaintiff suffers from psoriatic arthritis, an impairment diagnosed
> throughout the record, and that impairment is likewise "severe" under the
> Commissioner's definition of severity. The decisional finding to the contrary is not
> based on substantial evidence.
>
> 3. Plaintiff suffers numerous, diagnosed mental impairments that are
> "severe" under the Commissioner's definition of severity. These include (a) a
> personality disorder with dis-associative features, (b) depressive disorder, (c)
> anxiety disorder with agoraphobia and (d) a panic disorder. The decisional findings
> to the contrary are not based on substantial evidence.
>
> 4. A comparative review of the medical evidence with plaintiff's hearing
> testimony strongly suggests that plaintiff's testimonial complaints are supported by
> the substantial evidence of record. The decisional rejection of those complaints,
> largely offered in templated form, is not based on substantial evidence.
>
> 5. The decisional findings regarding the "B criteria" of the Commissioner's
> listings with regard to mental impairments, offered in the decision at step 2 in
> support of the non-severity of those mental impairments constitute remandable
> error. Specifically, the findings of (a) "no limitation" in activities of daily living,
> (b) "mild limitations" in social functioning and (c) "mild limitations" in
> concentration, persistence and pace are each contradicted by the medical record and
> are each not supported by substantial evidence.
>
> 6. The decisional RFC findings are not supported but substantial evidence
> because (a) they failed to include limitations incident to the rejected severe
> impairments and (b) are contradicted even by the medical assessments of the
> Commissioner's medical consultants at the lower levels of adjudication.
>
> 7. The ALJ's hypothetical questioning of the vocational expert on the basis
> of the decisional RFC rejected by this Court cannot serve to carry the
> Commissioner's step 5 burden. The Court particularly emphasizes the
> disconnection between plaintiff's mental and manipulative restrictions borne-out
> by the record and the limitations advanced in the ALJ's hypothetical questions.

14

IT IS THEREFORE ORDERED ON THIS 15TH DAY OF MARCH, 2018, THAT:

1. The administrative decision of April 22, 2015 is hereby vacated and remanded to the Commissioner for a new hearing and a new decision to address the Court's above enumerated concerns.

2. Upon remand the Commissioner is to arrange, schedule and pay for a magnetic resonance imaging (MRI) study of plaintiff's lumbosacral spine and include its findings in the medical evidence of record[.]

3. Upon remand the Commissioner is to afford plaintiff a new hearing to include the testimony of a medical expert, of the Commissioner's choosing, who specializes in inflammatory disease, specifically psoriatic arthritis.

4. Following the hearing process the Commissioner is to issue a new decision addressing the Court's concerns and determinations.

*Id*., *Order*, ECF No. 22 (issued in the 2016 case). Thereafter, the Commissioner moved in the

2016 case to amend the March 2018 Order. *Id.*, *Motion to Amend Judgment,* ECF No. 24 (issued

in the 2016 case). The presiding Judge held oral argument on that motion on July 18, 2018, and

ruled from the bench at the conclusion of that argument, orally granting in part and denying in

part the Commissioner's motion. *Id*., *Minute Entry,* ECF No. 31 (issued in the 2016 case).

Specifically, the Judge noted that "looking at [the March 2018 Order], there is a lot to look at.

And to the extent that that is really the core of what our problem is, I have no problems

amending the order. . . . I see ways of stripping this order down to its bare minimum. . . . So, that

is what I intend to do." *Transcript of July 18, 2018, Hearing*, ECF No. 29 (filed in the case

presently before this Court), p. 3. Referring to the March 2018 Order in the 2016 case, the Judge

amended that Order by striking the following language:

- Paragraph 1 on Page 1 (R. 534), reflecting a factual finding that Plaintiff had a "severe" back impairment;

- Paragraphs 2 through 7 on Page 2 (R. 535), reflecting factual findings that Plaintiff had additional "severe" impairments, that Plaintiff's testimony was strongly supported by the record, that substantial evidence did not support the ALJ's findings regarding the

Paragraph B criteria of the mental listings, and rejected the ALJ's RFC assessment and hypothetical question based, in part, on the additional "severe" impairments found in the March 2018 Order;

- The last portion of Paragraph 1 on Page 3 (R. 536) that begins with "and a new decision";

- Paragraph 2 on Page 3 (R. 536), ordering the Commissioner to arrange and pay for an MRI of Plaintiff's back; and

- Paragraph 4 on Page 3 (R. 536).

*Transcript of July 18, 2018 Hearing*, ECF No. 29 (filed in the case presently before this Court), pp. 5–6; *compare id. with* March 2018 Order (filed in the 2016 case). The Judge also issued a written order in the 2016 case on November 26, 2018, stating that the Commissioner's motion to amend the judgment was granted in part and denied in part. *Id.*, *Order,* ECF No. 35 (filed in the 2016 case).

The Judge's grant of the Commissioner's motion to amend the judgment in the 2016 case served to render inoperative the March 2018 Order issued in that case. In light of the Judge's significant amendments of the March 2018 Order in the 2016 case, this Court disagrees that the ALJ's 2020 Decision failed to comply with the order of remand issued in the 2016 case. This Court therefore rejects Plaintiff's arguments based on the ALJ's alleged failure to comply with the March 2018 Order in the 2016 case. Accordingly, Plaintiff's arguments in this regard will not serve as basis to remand this action.

### B.    RFC

Plaintiff next argues that the ALJ's RFC determination lacks substantial support because the ALJ failed to include certain manipulative limitations and off-task time. *Plaintiff's Moving Brief*, ECF No. 17, pp. 19–24. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is

16

charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include a limitation that is "supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before this Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that since February 15, 2008, the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to: lift/carry 10 pounds occasionally; stand/walk for 2 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given, except that she is unable to lift her upper extremities greater than 110 degrees and can only reach to the front and laterally to 18 inches. She is unable to handle any known irritants with her hands. Moreover, regarding the postural and environmental demands of work, I find that the claimant is able to perform jobs that require no exposure to unprotected heights, hazards or dangerous machinery; that involve no exposure to temperature extremes, wetness, and/or humidity; and that involve no concentrated exposure to undue amounts of dust or known chemical irritants. Additionally, she cannot have any exposure to excessive vibration—such as sitting on a machine, such as a forklift, that vibrates—or be in close proximity (closer than 6 inches) to a machine that visibly vibrates.

R. 438. In reaching this determination, the ALJ considered, *inter alia*, the findings of Dr. Bagner

and Dr. Kaplan as follows:

> . . . Dr. Bagner examined the claimant and noted that her weight was 188 pounds
> with a height of 63 inches. The claimant was noted to ambulate with a quad
> cane and she ambulated with moderate difficulty. She got on and off the exam table
> with moderate difficulty but dressed and undressed without assistance. He reported
> that she was not uncomfortable while seated. He stated that the claimant did not
> allow him to perform passive range of motion testing but during spontaneous
> activity, her knees showed normal range of motion. *Dr. Bagner noted that the
> objective findings did not correlate with the claimant's marked difficulty* (Exhibit
> 10F).
>
> At the supplemental hearing, as per the District Court order, I obtained testimony
> from an independent medical expert. Dr. Kaplan testified that he reviewed all the
> evidence of record. He cited Exhibit 10F wherein the claimant reported chronic
> pain and there is mention of her asthma and obesity. Dr. Kaplan referenced her back
> pain and osteoarathritis and he noted that Dr. Bagner had diagnosed fibromyalgia
> but with supporting evidence to warrant the diagnosis. Dr. Kaplan cited to a large
> gap in the claimant's treatment. Based on the evidence, Dr. Kaplan opined that she
> had limited use of her left arm with regards to lifting overhead. *He also noted that
> she was limited doing manipulative functions* and using a cane. In Dr. Kaplan's
> opinion, she utilized a cane because of her back pain and due to weight bearing. In
> his opinion, she could do sedentary work as of the time of her consultative
> examination in December 2019. Dr. Kaplan opined that she can sit, stand and walk
> for two hours but *he opined she had limitations in her hands and shoulder*. Dr.
> Kaplan noted that the claimant had pain on motion but no ankle problems and he
> cited Exhibit 9F/3 where her limitation with sitting and standing was discussed. Dr.
> Kaplan noted that the claimant was limping during her consultative examination in
> June 2012 but then he cited to her lack of records and any corroborating evidence
> from 2014 through 2019. *He testified that he was not able to make a determination
> regarding her residual functional capacity for the period prior to 2019 due to the
> significant lack of medical evidence.*

R. 440–41 (emphasis added); *see also* R. 440 (noting that Dr. Merlin found, *inter alia*, that

Plaintiff's "grasping strength and upper extremity manipulative functions were unimpaired").

The ALJ afforded weight to Dr. Merlin's opinion that Plaintiff's "grasping strength and upper

extremity manipulative functions were unimpaired" and to Dr. Bagner's opinion that Plaintiff

was limited to only occasional manipulative actions. R. 441.

Plaintiff challenges this RFC determination, arguing that the ALJ should have included manipulative limitations regarding "grasping, handling, fingering, or feeling of objects." *Plaintiff's Moving Brief*, ECF No. 17, pp. 19–24 (citing findings of Dr. Bagner and Dr. Kaplan). The Acting Commissioner argues that, even if the ALJ had adopted the manipulative limitations found by Dr. Bagner in 2019 and discussed by Dr. Kaplan at the April 2020 administrative hearing, the outcome of the case would not be different because evidence of these limitations existed only as of December 2019 and the ALJ found that Plaintiff was disabled beginning in April 2019. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, pp. 17–18.

This Court agrees with the Acting Commissioner. As set forth above, Dr. Bagner examined Plaintiff on December 31, 2019, finding, *inter alia*, that Plaintiff could use her hands occasionally for manipulation. R. 786, 792. When Dr. Kaplan testified at the April 2020 administrative hearing, he agreed with Dr. Bagner's finding in this regard, but expressly testified that, due to the significant gaps in the record, it was not possible for him to determine that Plaintiff had such manipulative limitations prior to December 2019. R. 458, 463–64, 476–78, 482.

Accordingly, because the ALJ found Plaintiff to be disabled as of April 25, 2019, R. 442–43, any error in failing to include a manipulative limitation as of December 31, 2019, is indeed harmless and does not warrant remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff next argues that the ALJ committed reversible error in failing to include a limitation in the RFC for being off task 10% of the work day, which would be work-preclusive. *Plaintiff's Moving Brief*, ECF No. 17, pp. 22–24. Plaintiff contends that Dr. Kaplan's diagnoses of chronic pain syndrome, Plaintiff's "need to ambulate with a cane[,]" and "her ability to sit without difficulty contingent on a sit/stand option for 5 minutes every hour she has back pain . . . during which 5-minutes she would not be working" support such a limitation. *Id*. at 22–23 (citing R. 460, 466, 468–70).

Plaintiff's argument is not well taken. As a preliminary matter, to the extent that Plaintiff contends that Dr. Kaplan opined that Plaintiff had chronic pain syndrome, R. 458 (testifying that the record does not establish Plaintiff had fibromyalgia and that "we'd rather leave, leave it under the generic name of a chronic pain syndrome"), "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, Plaintiff relies on Dr. Kaplan's testimony to support her contention that she needs to "ambulate with a cane[,]" and thus requires a sit/stand option. *Plaintiff's Moving Brief*, ECF No. 17, pp. 22–23 (citing R. 460). However, Dr. Kaplan neither testified that Plaintiff requires a cane to ambulate nor opined that she requires a sit/stand option. Rather, relying on Dr. Bagner's examination findings of December 2019, Dr. Kaplan testified that Plaintiff could possibly ambulate without a cane, but that it would be painful. R. 460; *see also* R. 466 (stating

20

that "the fact that someone can ambulate without a cane doesn't tell us how well she can

ambulate without a cane").

Plaintiff also refers to Dr. Kaplan's testimony in arguing that Plaintiff required a sit/stand

option, a limitation that, Plaintiff contends, required that Plaintiff be unable to work for five

minutes of every hour:

EXAMINATION OF MEDICAL EXPERT BY ATTORNEY:

Q She would be absent four times a month. But that's – we're going to need -- we're going to need that along for the doctor. Doctor, she says that in an eight-hour workday, she can stand and walk for two hours, the entire eight hours, and sit for three hours, the entire eight hours. Do you see that?

A Well, we have no reason to believe she has any difficulty sitting, so it's- -

Q Well, back pain.

A Well, whether she should have a sit-stand option, obviously, every hour -- she has back pain.

Q And how long would that sit-stand option be?

A About five minutes.

Q Okay. And during those five minutes, would she – she wouldn't be able to work.

A No. Well, it depends on the job, but –

Q Obviously.

A - - there are a lot of jobs that - -

Q I mean, if she was in your job, maybe she'd do – she'd never do my job.

A - - that might be but it, it's very common to see people with back pain, and either they are limited in terms of the amount of weight they have to -- can lift, or you give them a sit-stand option, if they have a -- and if they have a sedentary work situation. And technically, if they have a light work situation, they should have the opportunity to sit for five minutes every hour.

21

Q Exactly. I'm -- I don't want to get involved with the vocational issues. But just -
- the sit-stand option that we're just discussing here, which is kind of ephemeral --
but the sit-stand option for five minutes is to relieve symptoms.

A Is what?

Q Isn't that right?

A Well, it's a way of allowing the back muscles to relax and change, change the
stress.

Q Right, and to stretch and to -- or whatever. Correct?

A Well, yes.

Q Yes. So I'm just -- I mean, you're a doctor. You've seen a trillion patients.

A Right.

Q You're at least. During, during –

A Maybe not a trillion.

Q Again, again, I don't have any vocational questions. Believe me. During, during
a sit-stand option -- and I guess the five minutes is just an estimate. But I'm
assuming, and you tell me that I'm if I'm wrong, that the sit-stand option to relieve
symptoms would not allow that, that person who's doing sedentary work, like an
Inspector or an Assembler, to continue working during those five minutes. Now,
you could -- you could –

A How frequently -- when they just stand and move around a little bit at their station
for five minutes. That's fine.

Q Right, but they wouldn't be working during those five minutes.

A No, I guess.

R. 468–70. The Court is not persuaded that a fair reading of this exchange establishes that Dr.

Kaplan unequivocally opined that Plaintiff required a sit/stand option. However, even assuming

that Dr. Kaplan so opined, any failure to include a sit/stand option in the RFC would be harmless

error because Dr. Kaplan based this portion of his testimony on other doctors' opinions that were

issued after the date on which the ALJ found that Plaintiff was disabled. R. 442–43, 468–70.

22

For all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC enjoy substantial support in the record.

### C.    Obesity

Plaintiff also argues that the ALJ failed to properly consider, at steps three and four of the sequential evaluation, Plaintiff's obesity in accordance with the applicable standards, thus requiring remand. *Plaintiff's Moving Brief*, ECF No. 17, pp. 26–35. Plaintiff's arguments are not well taken.

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of Appeals for the Third Circuit has recognized that this action "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings." *Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022) (citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00–3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Most recently,

SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019); *see also id.* at n.14 ("We will use this SSR beginning on its applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Other courts have observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec.*, No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8 (M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI [medically determinable impairment]." *Id.* at *2. This ruling addresses the determination of obesity as a severe impairment, as follows:

> When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that

24

the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.

No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id*. at *3–4 (footnotes omitted). SSR 19-2p also specifically advises how to evaluate obesity

under the listings:

Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.

We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record.

*Id*. at *4. (footnotes omitted); *see also id.* at n.11 (citing 20 C.F.R. §§ 404.1526 and 416.926).

Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually

and in combination with her impairments, on her workplace function at step three and at every

subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10

("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR

02-01p, the Commissioner fails to cite a single authority that challenges the applicability of

*Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to

apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial

review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . .

but we do not 'require the ALJ to use particular language or adhere to a particular format in

25

conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir.

2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the

claimant's] obesity . . .  affect[s the claimant's] ability to perform basic work activities," not

simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d

Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical

evidence that her impairments, determinable or not, limit her ability to perform work activities")

(emphasis in original).

In the present case, the ALJ found that Plaintiff's obesity was a severe impairment at step

two of the sequential evaluation. R. 436. At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled a listed impairment,

specifically considering Plaintiff's obesity as follows:

> It is noteworthy that although there is no specific medical listing regarding obesity,
> I have evaluated the impairment herein pursuant to the extensive and detailed
> guidelines set forth in SSR 19-2p, including the references to the listings associated
> with musculoskeletal, respiratory, cardiovascular, and endocrine disorders. As SSR
> 19-2p states: "We will not make general assumptions about the severity or
> functional effects of obesity combined with another impairments. Obesity in
> combination with another impairments [sic] may or may not increase the severity
> or functional limitations of the other impairment. We evaluate each case based on
> the information in the case record." Accordingly, I have fully considered obesity in
> the context of the overall record evidence in making this decision.

R. 437–38. The ALJ also considered at step three that Plaintiff's impairments neither met nor

equalled, *inter alia*, Listing 1.04, which addresses disorders of the spine, or Listing 3.03, which

addresses asthma. R. 437. At step four, the ALJ again considered Plaintiff's obesity as well as

her 2008 admission to the hospital for atypical chest pain but without accompanying diagnostic,

clinical, or other objective evidence supporting a severe impairment, and instead normal chest x-

rays, unremarkable EKG findings, and unremarkable head CT findings, and the notation that her

asthma was controlled with medication; a 2012 consultative medical examination that noted her

obesity and reflected, *inter alia*, unremarkable pulmonary findings, Plaintiff's normal station and ability to negotiate the examination table, antalgic gait and ability to walk on her toes but not on her heels; 2013 progress notes reflecting Plaintiff's complaints of pain but no deformity in her lumbar or thoracic spines, her intermittent asthma, and the fact that Plaintiff was advised to exercise and lose weight; 2014 imaging of Plaintiff's lumbar spine that indicated degenerative spondylosis at L4-5 and L5-S1; 2019 imaging of Plaintiff's lumbar spine that indicated moderate disc space narrowing at L4-5 and L5-S1 and notation of obesity; a December 2019 consultative examination that reflected Plaintiff's weight of 188 pounds and height of 63 inches and findings that she could ambulate with moderate difficulty with a quad cane, was able to get on and off the exam table with moderate difficulty but dressed and undressed without assistance and was not uncomfortable while seated, and the finding that, although Plaintiff did not permit passive range of motion testing but her knees showed normal range of motion during spontaneous activity. R. 439–41.

In light of this record, the Court disagrees with Plaintiff's contention that the ALJ did not meaningfully evaluate her obesity at step three as required by *Diaz,* 577 F.3d 500, or at step four when crafting Plaintiff's RFC. *Plaintiff's Moving Brief*, ECF No. 17, pp. 31–35. In *Diaz*, the Court of Appeals for the Third Circuit remanded the case because the ALJ had found obesity to be a severe impairment at step two but did not discuss obesity at step three in combination with the claimant's joint dysfunction. *Diaz*, 577 F.3d at 504–05 (stating, *inter alia*, that "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court [and not remand the case]"). In contrast, in the present case, although scant, the ALJ expressly discussed Plaintiff's obesity at step three in combination with Plaintiff's other impairments, R. 437–38, and again considered her obesity at step four when fashioning the RFC,

R. 439–41. Accordingly, because the ALJ provided at least some discussion of Plaintiff's obesity at steps three and four, *Diaz* is distinguishable. *See Diaz*, 577 F.3d at 504; *see also Leonardis v. Comm'r of Soc. Sec.*, No. CV 18-13098, 2020 WL 6281606, at *3 (D.N.J. Oct. 27, 2020) (distinguishing *Diaz* and finding that the ALJ's statement that he considered obesity in accordance with the applicable Social Security rulings along with a discussion of the claimant's impairments was sufficient under Third Circuit law); *Farmer v. Comm'r of Soc. Sec.*, No. CV 19-13437, 2020 WL 6620152, at *2 (D.N.J. Nov. 12, 2020) (same); *cf. C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *5 (D.N.J. Nov. 9, 2021) ("Moreover, Plaintiff has failed to identify any record evidence showing that a more thorough consideration of obesity would have changed the ALJ's analysis. As such, the ALJ's analysis at step three was sufficient.").

Moreover, even if the ALJ's discussion at steps three and four was deficient under *Diaz*, Plaintiff has not shown how any error in this regard was harmful. Plaintiff does not explain how her obesity, individually or in combination with any other impairment, meets or medically equals a listed impairment nor does she identify any specific functional limitation caused by her obesity or otherwise imposes different or additional RFC limitations. *See generally Plaintiff's Moving Brief*, ECF No. 17. Neither the ALJ nor this Court will "make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment." SSR 19-2p, 2019 WL 2374244, at *4 (emphasis added); *see also Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather

than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."). Accordingly, Plaintiff, who bears the burden of proof at steps three and four of the sequential evaluation, has not shown that the ALJ's error, if any, in failing to more thoroughly discuss Plaintiff's obesity is anything other than harmless error that does not require remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Abigail L. v. Kijakazi*, No. CV 21-2275, 2022 WL 16362468, at *10 (D.N.J. Oct. 27, 2022) ("[E]ven assuming that Plaintiff is correct that the ALJ's analysis was deficient at steps three and four, Plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits.").

**D.    Step Five**

Finally, Plaintiff apparently challenges the ALJ's step five determination, arguing that the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations, *i.e.*, manipulative limitations and an off-task limitation. *Plaintiff's Moving Brief*, ECF No. 17, pp. 17–19, 22, 24. Plaintiff's argument is not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike at the first four steps of the sequential evaluation, it is the Commissioner who bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at 551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny,* 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be

found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the present case, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 485–89. The vocational expert responded that the jobs of ticket counter, addresser, and information clerk could be performed by such an individual. R. 489. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions to the vocational expert is that all her alleged impairments were not included, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Acting Commissioner has carried her burden at step five of the sequential evaluation and concludes that substantial evidence supports her determination in this regard.

## VII.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 19, 2023                              *s/Norah McCann King*
                                                     NORAH McCANN KING
                                                 UNITED STATES MAGISTRATE JUDGE